**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **REGINA SALUD,**<br><br>  Plaintiff,<br><br>  vs.<br><br>**EXPEDITORS INTERNATIONAL,**<br><br>  Defendant. | CASE NO. 18-cv-01677-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 69, 71 |

Plaintiff Regina Salud brings the instant employment discrimination and wrongful termination action against her former employer of 17 years, defendant Expeditors International ("Expeditors"), alleging claims for: (1) wrongful termination/abusive discharge in violation of public policy; (2) violation of California Labor Code section 1102.5; (3) age discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code §§ 12940 *et seq*.; (4) retaliation in violation of FEHA; and (5) failure to prevent discrimination and retaliation in violation of FEHA.

Now before the court is Expeditors' motion for summary judgment on all claims and on plaintiff's request for punitive damages. Having carefully considered the papers submitted, the admissible evidence, the pleadings in this action, and the oral argument held on February 11, 2020, and for the reasons set forth below, the Court (1) **GRANTS** the motion for summary judgment as to the FEHA claims for age discrimination, retaliation, and failure to prevent discrimination, as well as plaintiff's request for punitive damages; and (2) **DENIES** the motion for summary judgment as to the wrongful termination and section 1102.5 claims.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted:[1]

Expeditors hired plaintiff as an Operations Agent on December 30, 1998. She began work in January 1999. On or about August 4, 2014, plaintiff transitioned from working on-site at Expeditors to working as Supervisor in the Order Management Department in the Office of Shipping at Google On-Site, a special division of Expeditors that provided support for the shipping activities for data centers at Google. As Supervisor in the Order Management Department, plaintiff was responsible for a team of employees who executed order management tasks, including, for example, processing shipments requested via Google's ticketing systems.

Plaintiff initially reported to Johnathan Jenio. During that time, Jenio received a complaint from Google's Global Compliance Manager, Keunho Bae, regarding plaintiff not following procedures for classifying products. Bae told Jenio that such issues put Google at risk of fines, penalties, and loss of import and export privileges. The parties dispute whether these complaints were communicated to plaintiff.

In or about October 2014, Jenio assigned Marilyn Vargas to be plaintiff's new supervisor. Jenio hoped Vargas could devote more time to coaching plaintiff and give plaintiff additional tools and resources to be successful. As plaintiff's supervisor, Vargas spent time training plaintiff by, for example, showing plaintiff how to resolve customer issues and explaining how plaintiff's department should manage and process orders.

In or around November 2014, after approximately four months in the Supervisor role, plaintiff was transferred to another role as Logistics Coordinator, a non-exempt position in the NCD and GIG divisions of Google.[2] As Logistics Coordinator, plaintiff was no longer responsible for a team of employees. Instead, plaintiff was responsible for her own duties, including

---

[1] *See* Defendant's Separate Statement of Undisputed Material Facts, Dkt. No. 69-1; Plaintiff's Responsive Separate Statement, Dkt. No. 70-1.

[2] The parties disagree as to the reason for plaintiff's transfer. Expeditors proffers that plaintiff was "removed" from the Supervisor position and that plaintiff was "demoted," while plaintiff proffers that she was transferred to fill in for an employee on medical leave.

processing tickets and supporting the daily operations of the NCD and GIG Business Units. Plaintiff continued to report to Vargas. During the period when Vargas supervised plaintiff, Vargas made plaintiff aware of at least one complaint from a Google employee named Christina Galea related to plaintiff's handling of a shipping issue. Vargas also told plaintiff that Expeditors wanted her to "step up" and be "more active." On multiple occasions, Vargas and Jenio discussed issues with plaintiff's job performance, but the evidence does not indisputably show that such issues were communicated to plaintiff.

When Vargas left Expeditors in April 2015, Eduardo Yamsuan became plaintiff's new supervisor. Thereafter, Galea complained to Yamsuan about plaintiff's performance, specifically noting that she sent orders to the wrong location, pulled orders from the wrong inventory, and produced inaccurate reports. Yamsuan communicated Galea's complaints to plaintiff, although it remains in dispute when plaintiff was made aware of the issue and how much detail she was given. In addition, during this period, Yamsuan made plaintiff aware of certain attendance issues. Specifically, plaintiff was occasionally absent at work due to an issue with a lock hip joint. Plaintiff had informed Yamsuan about the issue but did not submit documentation to Expeditors for a reasonable accommodation. On several other occasions, plaintiff was late to work due to traffic.

In or about December 2015, plaintiff again transitioned to the role of Logistics Coordinator for City Block. Her new role was similar to her previous role, except that she was responsible for only one Google account rather than several. Plaintiff's direct supervisor was Violet Do. After plaintiff assumed her new role, Yamsuan made Do aware of Galea's prior complaint about plaintiff and an issue raised by a Google manager named Monica Montoya, who complained that plaintiff had improperly provided compliance information when doing so exceeded the scope of her role in logistics.

While supervising plaintiff, Do became aware of at least two other customer complaints regarding plaintiff's performance. First, Google employee Perla Rios approached Do to complain about plaintiff's lack of attention to detail, which resulted in delivery of the wrong type and quantity of product to an end user. Second, a Google employee named Zack raised similar

3

concerns, stating that plaintiff's improper execution of orders could cause a global delay in the customer's project. Do spoke to plaintiff about these issues and retrained her. Plaintiff appeared to understand the retraining and was not the subject of any additional customer complaints.[3]

With respect to plaintiff's employment, a separate issue arose. In late 2015 and again in early 2016, Yamsuan removed overtime hours from plaintiff's timecard. Pursuant to Expeditors policy, plaintiff was supposed to obtain permission before working overtime, but plaintiff understood that even if she did not obtain such permission, she would still be paid for the overtime worked. After plaintiff requested that Yamsuan put the overtime back on her timecard, and Yamsuan declined to do so, plaintiff complained to Jenio, who was then a District Manager. Jenio corrected the timecard to reflect the overtime worked. Jenio also raised the issue with Yamsuan. Yamsuan later approached plaintiff to ask why she had "throw[n] [him] under the bus." Plaintiff denied having done so, telling Yamsuan that she only wanted her timecard fixed and Yamsuan had not responded to her requests.

In or around February 2016, Justin Hill, a Regional Manager for Expeditors, directed Jenio and Yamsuan to conduct a formal performance review immediately for plaintiff, who had not received such a review since July 21, 2010. Hill told Jenio and Yamusan that failure to schedule and execute the annual reviews was contrary to Expeditors' policies and would have a negative effect on employee satisfaction. Jenio prepared a draft performance review, which he sent to Yamsuan for comments, but the review never occurred.

Expeditors terminated plaintiff's employment on March 17, 2016, purportedly due to poor performance, poor attendance, and customer complaints. Expeditors did not provide plaintiff with any written warning or a Performance Improvement Plan prior to the termination. On March 16,

---

[3] The parties appear to dispute the number of times plaintiff's supervisors spoke to her about performance issues and customer complaints. Expeditors proffers evidence of several such conversations. In her separate statement, plaintiff contends that the only issues her supervisors discussed with her related to absenteeism and a single customer complaint from Galea. In her own deposition testimony, however, plaintiff indicates that she had conversations with multiple supervisors, including Vargas, Jenio, and Yamsuan, about customer complaints. Her testimony further indicates that she several discussions with various supervisors about performance issues, even if not specific complaints.

2017, plaintiff filed a Charge of Discrimination with the Department of Fair Employment and Housing ("DFEH") against Expeditors.[4]

**II.  LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the plaintiff to establish the existence of a material fact that may affect the outcome of the case under the

---

[4] Plaintiff objects to Exhibits G, H, I, and J to the Declaration of Theodora Lee, and Exhibits A, B, and C to the Declaration of Eduardo Yamsuan on the basis that they on the basis that they lack authenticity, constitute hearsay, and lack foundation and personal knowledge as to comments on the email exhibits (e.g., "example of customer dissatisfaction from a customer service standpoint"). With respect to authentication of Exhibits A-C, Expeditors points to Yamsuan's declaration in which he states that the exhibits are true and correct copies of emails he received from Google employees. This, however, does not explain why the documents as presented do not evidence normal, undoctored records, i.e., they do not appear to be complete emails, and more notably, it does not explain when, why, and by whom the comments were added. Yamsuan also testified that he had never seen the emails and tickets now proffered in Exhibit J (Bates label EXPEDITORS-000124 – EXPEDITORS-000128). Additionally, although plaintiff's deposition testimony suggests she is familiar with some of the substance of the emails, none of her statements suffice to authenticate the documents as they are presented here. Even with authentication, the documents constitute classic hearsay and the evidence required to proffer them as business records is far from adequate. Accordingly, the exhibits are excluded. Whether they are admissible at trial will depend on the showing made at the time.

5

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In the summary judgment context, the court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If the plaintiff "produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by" defendants. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted). Thus "where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation marks omitted).

### III. ANALYSIS

Defendant moves for summary judgment as to each of plaintiff's five claims. The Court considers each cause of action in turn.

#### A. Age Discrimination in Violation of FEHA

Plaintiff asserts a claim for age discrimination in violation of FEHA in connection with the terms and conditions of her employment and the performance standard to which she was held.

Age discrimination claims brought under FEHA are analyzed using a three-step framework. The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. The employer then must offer a legitimate, nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving, by specific and substantial evidence, that the employer's proffered reason was pretextual. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-21 (9th Cir. 1998); *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 806, 85 Cal. Rptr. 2d 459, 465 (1999). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089,

6

1093, 67 L. Ed. 2d 207 (1981). Consequently, if plaintiff fails to establish a *prima facie* case or fails to present sufficient proof of pretext, the defendant is entitled to summary judgment. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1734, 35 Cal. Rptr. 2d 181, 189 (1994).

### 1. Prima Facie Case

To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she was performing satisfactorily in the position held; (3) she suffered an adverse employment action; and (4) some other circumstances suggesting a discriminatory motive. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355, 8 P.3d 1089, 1113 (2000). The Ninth Circuit has noted that the fourth element should be evaluated "with some flexibility." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1043 (9th Cir. 2017) (quoting *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996)). Here, the parties do not dispute that the first and third elements are satisfied. That is, plaintiff is in a protected category (over 40 years of age) and suffered an adverse employment action (termination).

With respect to whether plaintiff's job performance was satisfactory, the Court finds that the record contains evidence sufficient to establish a *prima facie* case. While defendant proffers evidence of plaintiff's tardiness and absenteeism, as well as performance issues, plaintiff proffers contrary evidence, including that Expeditors received positive feedback about plaintiff from at least two Google employees.[5] Further, Jenio prepared a draft performance review in or around 2016 with mixed comments. While rating plaintiff "below expectations" in three categories (work quality and timeliness, job execution, and exceptional customer service), he also rated her as "meets expectations" in four categories (effort and teamwork, attendance, training, and Expeditors culture). Moreover, although at various times Jenio, Vargas, Yamsuan, and Do discussed performance issues with plaintiff, the extent of the discussions is in dispute and plaintiff was never given any written warning or placed on a Performance Improvement Plan before she was

---

[5] Plaintiff contends that Expeditors has withheld plaintiff's positive performance reviews (called "KPIs"). Expeditors avers that Google has the documents, while Google directed plaintiff to obtain them from Expeditors. As noted herein, however, there is no dispute that plaintiff received some positive comments from customers, which may have been reflected in the KPIs.

7

terminated from 17 years of employment. Accordingly, plaintiff has met her initial burden on the second element of the *prima facie* case, that is, showing that she performed satisfactorily in her positions with Expeditors.

However, with respect to whether circumstances suggest a discriminatory motive, plaintiff's arguments fail. Although plaintiff avers that Expeditors gave preferential treatment to plaintiff's substantially younger, less experienced colleagues, the Court finds scant evidence in the record to support this assertion. Plaintiff testified at her deposition that she "feel[s] like [Expeditors] prefer[red] the younger ones with [a] fresh mind" and "gave them more support in terms of . . . not training but guidance." When pressed for details, plaintiff testified that she had no evidence or examples of such differential treatment. She even testified that like her colleagues, she had one-on-one trainings with Jenio, Vargas and Yamsuan during her time at Expeditors. Mere supposition of discrimination is insufficient to state a *prima facie* case.

Further, although plaintiff's younger colleagues, Bernard Bach, Tawny San Juan, and Do, were promoted in 2015, plaintiff has not proffered evidence that she was competing or even eligible for those promotions. Plaintiff also testified that Bach was qualified for his new position and she had no reason to believe San Juan was not qualified for her new position. With respect to Do, plaintiff testified that besides her belief that Do had limited logistics experience, plaintiff had no reason to believe Do was not qualified for her new supervisory position or that Do did not perform her duties as a supervisor competently.

Likewise, although Expeditors did not grant plaintiff's request for a transfer to another department in 2016, this decision is not surprising given that plaintiff already had been transferred several times, to positions with declining responsibility, over the previous two years. Finally, plaintiff's proffered evidence that Yamsuan "blamed" plaintiff for a mistake made by Miriam Tam, another Logistics Coordinator, is not evidence of discriminatory motive. The evidence shows that Yamsuan noted *both* plaintiff's and Tam's involvement in the relevant error, and in any event, plaintiff has not proffered any evidence of Tam's age relative to her own.[6]

---

[6] Plaintiff further testified that over the entire course of her employment with Expeditors, no one ever made a comment about her age.

8

Because there is no evidence in the record suggesting discrimination on the basis of age, the Court finds plaintiff has failed to state a *prima facie* case of age discrimination. Accordingly, Expeditor's motion for summary judgment as to this claim is **GRANTED**.[7]

### B. Retaliation in Violation of FEHA

Plaintiff does not oppose Expeditor's motion for summary judgment as to plaintiff's claim of retaliation in violation of FEHA. (Dkt. No. 70 at 6 n.1.) Accordingly, this cause of action is **DISMISSED WITH PREJUDICE**.

### C. Failure to Prevent Discrimination and Retaliation

The parties agree that plaintiff's cause of action for failure to prevent discrimination is derivative of her claim for age discrimination. Thus, this claim fails for the same reasons. Defendant's motion for summary judgment as to plaintiff's claim for failure to prevent discrimination claim is **GRANTED**.

### D. Retaliation in Violation of California Labor Code § 1102.5

Plaintiff next asserts a cause of action for violation of California Labor Code section 1102.5 arising out of her alleged requests for corrections to her timecard in December 2015 and in January 2016.

Section 1102.5 is a "whistleblower" statute which prohibits an employer from retaliating against an employee who discloses information to a government or law enforcement agency

---

[7] Even if plaintiff had stated a *prima facie* case, her age discrimination claim still would fail. Expeditors has proffered evidence that plaintiff was terminated due to absenteeism, performance issues, and customer complaints, and thus, would satisfy its burden of proffering a legitimate, non-discriminatory reason for terminating plaintiff's employment. The burden would then shift back to plaintiff to show, by specific and substantial evidence, that Expeditor's legitimate reason for terminating her employment was pretextual. Plaintiff has not met satisfied this burden. Although plaintiff may have performed well or adequately in some respects, the evidence shows shortcomings in her performance that lend support to the decision to terminate. Further, that Yamsuan and Jenio met to discuss plaintiff's termination in 2016, at which time Jenio asked Yamsuan to provide him with customer complaints about plaintiff, is not specific and substantial evidence of pretext. Jenio already was aware that plaintiff had received some positive feedback from customers, and there is no evidence Jenio did not consider this feedback when deciding to terminate her. Merely asking for customer complaints that could support termination, without more, is reasonable from the standpoint of any employer and is not evidence of pretext. As such, plaintiff's proffered evidence of pretext does not constitute specific or substantial evidence of discrimination on the basis of plaintiff's age.

9

"where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(b). To establish a *prima facie* case for retaliation under section 1102.5, an employee must show (1) she engaged in protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. *Akers v. Cty. of San Diego*, 95 Cal. App. 4th 1441, 1453, 116 Cal. Rptr. 2d 602, 610 (2002).

The same *prima facie* elements and burden-shifting framework applicable to the FEHA retaliation claim apply to the section 1102.5 claim. That is, if an employee establishes the *prima facie* case, the employer must offer a legitimate, nonretaliatory reason for the adverse employment action, after which the burden shifts back to the employee to show the proffered reason is pretext for retaliation. *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 138, 68 Cal. Rptr. 3d 568, 580 (2007).[8]

Expeditors does not appear to dispute that plaintiff engaged in a protected activity by reporting to Jenio that Yamsuan had removed overtime hours from her timecard. Further, and as previously explained, there is no dispute that Expeditors subjected plaintiff to an adverse employment decision, namely, termination. Rather, Expeditors argues that plaintiff's section 1102.5 claim fails as a matter of law because plaintiff cannot (1) show the requisite nexus between her request to have her timecard corrected and her termination, or (2) rebut Expeditors' legitimate non-retaliatory reason for terminating her employment. The Court considers each purported basis for summary judgment in turn.

---

[8] In her opposition, plaintiff cites California Labor Code section 1102.6 for the proposition that Expeditors is subject to a "heightened evidentiary burden" on summary judgment and must provide "clear and convincing evidence" that plaintiff would have been terminated even if she had not engaged in protected activity. However, section 1102.6 "does not alter the analysis of pretext at the summary judgment stage in cases involving [section] 1102.5." *Abdel v. Ikon Office Sols., Inc.*, No. C-05-1685 JCS, 2006 WL 2474331, at *10 n.5 (N.D. Cal. Aug. 25, 2006) (citing *Patten v. Grant Joint Union High School Dist.,* 134 Cal. App. 4th 1378, 1384, 37 Cal. Rptr. 3d 113 (2005)); *Killgore v. Specpro Prof'l Servs., LLC,* No. 5:18-CV-03413-EJD, 2019 WL 6911975, at *11 (N.D. Cal. Dec. 19, 2019) (holding section 1102.6 "[wa]s not at issue" where "[d]efendant ha[d] shown no genuine dispute of material fact exist[ed] as to [p]lantiff's 1102.5 claim").

10

*1. Nexus*

Plaintiff argues that a causal nexus exists based on, among other things, the timing plaintiff's complaints relative to her termination and Yamsuan approaching her after she complained to Jenio about her timecard. The Court agrees.

Both Jenio and Yamsuan were aware of plaintiff's complaints about the omission of overtime hours from her timecard. Plaintiff has proffered evidence that Yamsuan confronted her about raising this issue to Jenio. Fewer than three months later, without warning, Expeditors terminated plaintiff's employment. This evidence is sufficient to demonstrate a nexus between plaintiff's complaints and her termination. *See Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69-70, 105 Cal. Rptr. 2d 652, 666 (2000) (courts may infer causation from circumstantial evidence, including "the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision") (quoting *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir. 1988)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.").

*2. Rebuttal to Legitimate Reason for Termination*

Expeditors further contends that plaintiff's section 1102.5 claim fails because she cannot rebut Expeditors' legitimate, non-retaliatory reasons for terminating her employment, namely, absenteeism, customer complaints, and poor job performance.

Expeditors' argument fails to persuade. Although temporal proximity alone does not create a triable fact as to pretext, the timing of plaintiff's complaints to Jenio about her timecard (late 2015 and early 2016), Jenio's meeting with Yamsuan to discuss plaintiff's termination (February 2016), plaintiff's ultimate termination (March 2016), and her 17-year employment, undermine Expeditors' explanation for the adverse employment action. Further, plaintiff has proffered evidence that Yamsuan began treating her differently after she reported the timecard issue to Jenio, and on one occasion, directly confronted her about it by asking why she had "throw[n] [him] under the bus." During this same period of time in early 2016, Jenio drafted a performance review for plaintiff for the first time in almost five years. However, Jenio and

11

Yamsuan did not bother to complete the review prior to terminating plaintiff's employment, nor did Expeditors provide plaintiff with any written warning or a Performance Improvement Plan. Ultimately, although Expeditors has proffered evidence of absenteeism, performance issues, and customer complaints beginning in 2014, plaintiff was a 17-year employee of the company, and there remains a triable issue of material fact regarding what precipitated her termination in 2016.[9]

For its part, Expeditors has proffered evidence that plaintiff violated Expeditors policy by working overtime without seeking prior approval. Plaintiff, however, has proffered counterevidence that Expeditors' overtime policy provided that employees were to be paid overtime whether or not time was authorized. Expeditors further proffers that it eventually paid plaintiff for all time worked. Even if it did pay plaintiff, however, a reasonable jury could find that Expeditors also terminated plaintiff for retaliatory reasons.

Thus, the Court finds that the evidence in the record, when viewed as a whole, raises a triable issue of fact regarding whether Expeditors' proffered reason for terminating plaintiff was pretext for retaliation arising out of her complaints about timekeeping. As such, Expeditors' motion for summary judgment on the section 1102.5 claim is **DENIED**.

### E. Wrongful Termination/Abusive Discharge in Violation of Public Policy

The parties agree that plaintiff's cause of action for wrongful termination in violation of public policy is derived, at least in part, from her section 1102.5 claim. As such, the claim survives for the reasons previously explained. Expeditors' motion for summary judgment as to the wrongful termination claim is **DENIED**.

### F. Punitive Damages

Finally, the Court must consider whether Expeditors is entitled to summary judgment on plaintiff's request for punitive damages. "Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference . . . a level which decent citizens should not have to

---

[9] Expeditors argues that although plaintiff's issues began in 2014, there were at least two customer tickets raising concerns about plaintiff's performance in early 2016, shortly before her termination. However, there is no evidence that Do, who addressed these customer concerns, was directly involved in the termination decision, and moreover, Do testified that once retrained, plaintiff did not make the same mistake again.

tolerate." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287, 31 Cal. Rptr. 2d 433, 444 (1994). Such a remedy should be granted only with the greatest caution. *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal. 3d 1379, 1392, 743 P.2d 1323, 1330 (1987). To state a claim for punitive damages, a plaintiff must show "by clear and convincing evidence that the defendant is guilty of fraud, oppression or malice." Cal. Civ. Code § 3294(a). With respect to corporate employers, punitive damages may be awarded if a plaintiff can show that an "officer, director, or managing agent of the corporation" (1) had "advance knowledge of the unfitness of the employee [accused of wrongdoing] and employed him or her with a conscious disregard of the rights or safety of others" or (2) "authorized or ratified the wrongful conduct for which the damages are awarded" or (3) engaged in "oppression, fraud, or malice." Cal. Civ. Code § 3294(b).

Here, the Court is not persuaded by plaintiff's argument that there is evidence of animus on the part of Jenio and Yamsuan, or that Expeditors concealed material facts about plaintiff's favorable job performance. Although plaintiff has established triable issues related to retaliation, she has not proffered evidence that Expeditors, through any officer, director, or managing agent, acted with a level of culpability that rises to the level of extreme indifference. Thus, Expeditors' motion for summary judgment on plaintiff's request for punitive damages is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, the Court (1) **GRANTS** the motion for summary judgment as to the FEHA claims for age discrimination, retaliation, and failure to prevent discrimination, as well as plaintiff's request for punitive damages; and (2) **DENIES** the motion for summary judgment as to the wrongful termination and section 1102.5 claims.[10]

This Order terminates Docket Numbers 69 and 71.

**IT IS SO ORDERED.**

Dated: April 10, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10] For the reasons stated on the record at the hearing on the motion, plaintiff's administrative motion to seal certain documents designated as "Confidential" by Expeditors. (Dkt. No. 71) is **DENIED**.

13